Good morning ladies and gentlemen. We have some cases submitted on the briefs. Abbey Dental Center is the first case submitted on the briefs and we'll proceed to hear argument on Mattson v. Kelly. Okay, good morning your honors. May it please the court, Judah Lakin on behalf of appellants, Ms. Mattson and Mr. Borisoff. Although appellants are not here today as they live in Reno, they are watching the video via live stream. In addition, my co-counsel Mark Vanderhaad is seated at council table. I would like to reserve five minutes for rebuttal. I'd like to take the limited time we have today to focus on three important points. First, I want to start with a sort of broad strokes view of what happened here as I think it will help frame both the regulatory and constitutional claims. I will then turn to our claim with respect to the regulation and close with a brief discussion of our due process claim. So first, broad strokes. This court must reverse the district court because otherwise it would be sanctioning the egregious process used by USCIS here. USCIS revoked an approved visa petition in reliance on an ex-spouse's Bufalino statement. In doing so, USCIS affirmatively hid Bufalino statement from Mattson and Borisoff and in purporting to provide them with a summary of its contents misrepresented what was in the statement. If USCIS had actually provided Bufalino statement to appellants as we submit the law requires, the entire record in this case would have been different. USCIS's actions put appellants in an untenable position, attempting to rebut evidence that they had never seen nor even knew existed. Had appellants had access to Bufalino statement, they could have addressed her accusations head on and pointed out the myriad ways in which that document lacked indicia of reliability. It was not sworn, it did not contain a date, it did not have any information on who took the statement, under what circumstances, it contained some odd rhetoric, and there were a host of other issues with the statement. Even... Counsel, I'm sorry, you could make those arguments before the district court with respect to the statement. So what would you have presented, or what would have been presented differently before either BIA or the district court if the statement had been produced? Certainly, Your Honor. So I think several things. One, in his declaration, he could have actually addressed the allegations against him head on. He didn't know that he had been accused of making threats, so he never said that he hadn't made them. He didn't know that he was accused of stealing money, so he never addressed those threats. And I think his declaration would have been more powerful. I mean, it was very detailed, but it would have been more powerful if he had actually addressed the accusations against him, which he didn't know. The document also contained corroborating information. It discussed that they lived together. It discussed that they co-mingled finances. He could have pointed that out, that that supported his version of what happened. And he could have actually made all of the arguments that I just made. Those aren't just for the district court. He could have made those to the board and CIS, pointing out that this document has a lot of issues with it. And in fact, if he had done so, perhaps USCIS would have done the same thing that they did in district court, which is go back to Bufalino and try and fix the problems with the statement by getting a new sworn statement from her. But the problem with that sworn statement was it brought up other issues. She had a different version of how long they had lived together. She talked about the fact that she had actually gotten married to him because she thought it would allow her to spend more time with her son and not work, which is a valid reason to get married and not immigration fraud. So all of those things could have come up in the agency record. He could have undermined her credibility. He could have addressed specific things. And perhaps if he had known the allegations against him, he might have worked harder to find more corroborating evidence. I mean, 10 years had passed. So as he explained in his declaration, he was at a certain disadvantage because a lot of what he might have had was gone. But had he known how serious the allegations were, he might have worked harder to put more in the record. So his declaration, the first one in any event, really focused on attacking Ms. Bufalino's credibility with a very, very limited amount of information with respect to the validity of the marriage. So how would that have differed if he'd seen her statement? I mean, he was already attacking her credibility. You're saying he would have denied some of her accusations, but how does that get to the validity of the marriage? Well, with respect, Your Honor, I think the declaration did two things. I think the declaration was very detailed about their marriage. I mean, he talked about how the marriage deteriorated, he had details about the dishwasher, and I think it showed that the marriage was valid. It just wasn't a good marriage. With respect to him attacking her credibility, I think that's exactly the problem. He was put in a position where he was forced to say, I mean, where what he chose to say was what he said, that he thought maybe that she was intoxicated or that she wasn't trustworthy. But what else was he supposed to say? He had no idea what she had said or when she had said it or how she had said it. He didn't even know there was a written statement. Well, he knew that she had said that the marriage was not valid, and so he would have been put on notice that what he needed to do, he needed to persuade the agency that, in fact, it was a valid marriage. Well, he was essentially given a version of events where she corroborated that they had agreed to marry essentially for money. That's what the notice of intent to revoke made out, right? That he was interviewed, he admitted to a fraudulent marriage, they essentially called her and she corroborated that. But that's not what happened at all. In fact, she says she was duped that nine months after marrying that she figured out that it was a fraudulent marriage. And to note, she doesn't provide a single fact in support of that statement. So all of the issues that were present in Ching make sense here, right? That she was potentially just an upset spouse because things didn't work out, and now she's accusing him with no actual evidence. I mean, nothing in her statement was corroborated by anything else in the record. Well, what you're addressing, and I probably set you off on this because you had started out with broad strokes, and I asked you a question that led you into a discussion of prejudice. But really, I think the first issue you need to address is the language of the regulations and how that supports your position that the agency erred. Certainly, Your Honor. So let me turn to the regulation. So I think the plain language of the regulation is clear. Information contained in the record of proceeding must be disclosed to the applicant or petitioner. That's what subsection 2 says. There's nothing ambiguous about that. Both district courts in GFORI and NICAR agree and say that's clearly what the regulation means. You must disclose the evidence. And that makes sense. It accords with the way that the regulation is formulated. The overall structure of the regulation is as follows. First, the beginning says you shall be permitted to inspect the record, i.e., you have a permissive ability to inspect the record if you ask, but there are some exceptions. The first exception, subsection I, imposes an affirmative obligation on CIS to advise with respect to derogatory information. So all they have to do is advise you of the general nature of the information and give you a chance to rebut it. The second. So under section 1, you're not arguing that they were required to produce documents or evidence under that section of the regulation just to advise the petitioner? That's correct, Your Honor. And that's in accord with this court's precedent in Assam. And then subsection 2, which is applicable here, the next exception, it specifically says that the information must be in the record of proceeding and it must be disclosed. If the government's argument is correct that all disclosed means is that you have to essentially advise with a summary of the information, then why are there two subsections? It reads subsection 2 out of the regulation, as does the Seventh Circuit's interpretation. The only courts that have actually addressed the entire regulation and made sense of it are Ghaffori and Nyker. But Ghaffori and Nyker, certainly Ghaffori, interprets section 2 in terms of allowing the petitioner an opportunity to rebut the evidence, but that section doesn't address rebutting evidence. That's only in section 1. So how do you respond to that? It seems to be an analytical error. I don't think so, Your Honor. I think it's clear that subsection 2 is about rebuttal. I mean, that's in a separate part of the regulation. But it doesn't say anything at all about rebuttal. No, but the other one It just describes what will be contained in the record. Certainly. But the point is this goes to statutory eligibility, a significant right, as opposed to number 1, which is generally dealing with discretionary information. And so the reason that they have to be given the information is so that they can rebut it. But this is also, you must understand, this is within the context of the greater regulation. And 8 CFR 103.2B8, so earlier along in the same regulation, discusses that that's the purpose of an NOIR or an NOID, to give an opportunity to rebut the information. So this is within that context. The agency did rely, at least in part, on some inconsistencies in your client's statement, didn't it? Actually, no, it did not, Your Honor. The USCIS made some of those points. But the board I said the agency. Yeah, but that was not the agency's ultimate decision, which is the board's decision, did not rely on any inconsistencies. It merely found our appellant's statements unpersuasive. And that makes sense, because they didn't have the information they needed to rebut. They specifically addressed all of those arguments in briefing before the board, pointing out why the agency had mistaken. And presumably, the board found that persuasive because it didn't rely on any of it. Was the agency mistaken in noting that your client's assertion that Buffalini never filed for an annulment, was that inappropriate for the agency? In fact, she did, correct? Yes. I'm not sure I understand the question, though. The question is, was it permissible for the agency to make a determination that your client lacked credibility based in part on inconsistent statements that he made, including the statement that the former spouse never filed for annulment when a record search showed that she did? Well, it would have potentially been, Your Honor, except that he provided explanation that he wasn't served and didn't know. And that was apparently found persuasive by the board because the board made no credibility finding. They did not find him not credible. So they don't discuss that at all. They simply say his attempts to attack her credibility were unpersuasive, which makes sense because he didn't have the information. So he made broad statements about the fact that she's untrustworthy, which rang hollow. Had he had the actual evidence, he could have made a much better rebuttal. But he didn't make broad statements. His statements were really specific allegations about abusing alcohol and perhaps drugs, mistreating her pet turtle, lying, being untrustworthy, working as an exotic dancer, you know, on and on. And he had pages just attacking her credibility and, as I recall, a sentence or two saying that she was a fun girl, so he married her. And the agency didn't find that persuasive. Well, the agency found his allegations of the fact that she was drunk at the time speculative and unpersuasive. And, of course, they did because he didn't have any proof of that. But had he actually been able to address what she said and point out that it was contradictory to what he supposedly admitted to, his rebuttal would have been much more persuasive. I mean, there were a lot of issues with that statement. I mean, it had no information as to who took the statement. It was completely devoid of the immigration agents. It wasn't clear whether she wrote it or whether she had orally told it to someone. It wasn't clear when they did it. She says later that she thought it was in 2004. But according to the NOIR, it appears that it was in May of 2005 after she talked to the agents. Yes. Was Bufalino available for your client to obtain an affidavit or declaration? Not to my knowledge, but it's not clear why he would have attempted to do that given that he had, in his view, they had essentially, immigration agents had called her on the phone and said, you know, Roman admitted, Mr. Borisov admitted to the fact that you two agreed to a fraudulent marriage, and she corroborated that, period, done. But that's not what happened at all. And that's not even close to what she said. But they didn't really, you cited another case, I think it was Chang, but in that case, all you had was, all the agency had was the statement of the ex-spouse. In this case, we have Mr. Borisov's admission to agents that it was a fraudulent marriage. How do you address that? Well, certainly, Your Honor, but it's an admission he vehemently denies, and he has a reasonable explanation for it, that he explained not that the marriage was fraud at the inception, which is the only thing that matters, just that it wasn't bona fide at the time, that it had broken down. So and in Chang, they were given the information that the ex-spouse had said. Here, not only were they not given the information, they weren't even told that a statement existed. So it's actually much worse than Chang. So if we were to, just hypothetically, if we did not agree with your reading the regulations and, in fact, agreed with the Seventh Circuit in Cali as to how the regulations should be perceived, it seems that what you're left with is your due process argument, which seems to be the thrust of your argument. So there's some issues with your due process claims in that it appears you waived two of the three that you make now. Certainly, Your Honor. So we don't believe that they were waived. We think, first of all, as a matter of fact, they're clearly presented. If you look at ESCF number 12, his first amended complaint, he clearly makes a due process claim in both paragraphs, I believe, 35 and 47. And then in his motion for summary judgment on page 24, which I think is ECF number 64, he specifically says that he has the right to cross-examine every one of the people that we raise, that he's addressing now. So the claim was clearly presented, especially when viewed liberally as no displeasing should. And in addition, as we argued in our briefing, we think the Supreme Court case in LeBron makes clear that the claim was preserved and that even if you disagree with our representation of the record, which I think is pretty clear, that this is just a slightly different argument and that you are allowed to raise new arguments on appeal. Thank you, Counselor. Okay. Thank you.  Thank you, Your Honor. Good morning.  My name is Anthony Bianco, the Department of Justice representing the government in this case. There are two major points that I'd like to discuss this morning with the Court. The first regards a due process claim. As an initial matter, as the Court raised, the waiver of some of the arguments regarding the due process claim is significant in this case, and I think that narrows down the issues that should resolve some of the issues. The only thing that we should be discussing today that the government believes is before the Court is the Bufalino Statement. The cross-examination and the unredacted report from the investigators is not something that should be part of the due process consideration before the Court today. The argument was not raised sufficiently before the trial court as the argument regarding the unredacted statement by the officers and the cross-examination issue. This is not a pure question of law. As Kate cited in LeBron, the issue there was whether Amtrak was a government actor. This case has, and the matters before it and the due process claim, are specific factual matters. This is borne out by the District Court's opinion, but they undertook an in-depth analysis of Matthews with regards to the Bufalino Statement. There's considerable amount of facts that the Court would need to have before it in order to resolve the issue of due process. Would the agency have revoked if it did not have the Bufalino Statement? Could you start with a yes or no? Your Honor, I don't know. My reading of the BIE's opinion, if that's a sufficient answer, by reading the opinion, I would say yes. There's the statement from Mr. Borsov himself, there's conflicted statements, but his initial statement was this was a fraudulent marriage. The normal indicia of proving a valid bona fide marriage was not present in this case. The BIE noted that. The statements from other individuals, the tax return, I think the two loan bills were insufficient in the BIE's review to find that there was a bona fide marriage. So I would say yes, Your Honor, that there is sufficient evidence absent the Bufalino Statement to establish that. So returning back to the waiver argument, again, it wasn't sufficient. What's the time sequence here? When did agents interview Bufalino? I'm not certain, Your Honor, but I believe the investigation was sometime around 2005. So the original statement from Ms. Bufalino was dated. And when did the agency notify the plaintiffs in this case that it was revoking? The notifications took place in, there were two notifications, 2013, Your Honor. 2013, Your Honor, I believe was the notice of intent to revoke. Well, let me ask it this way. When the agency first gave notice to Borisov that they were revoking, did they have the Bufalino Statement? It was referred to in the notice of intent to revoke, Your Honor. They had it? Yes. And is it fair to say that's primarily what they were relying on? It was, whether it started the investigation or not, I believe the investigation was started when they first spoke to Mr. Borisov and he gave his initial admission. I think that predated the statement. So I think from that, they may have found that there was a potential issue with marriage fraud that they discussed and they had the interview with Ms. Bufalino. And is it the agency's position that they were under no obligation to provide the plaintiffs in this case with the Bufalino Statement? Reading the regulation, Your Honor, yes, the summary or the... No obligation? By the regulation, Your Honor, no. Whether the statement was inculpatory, exculpatory, mitigating or otherwise, no such obligation? No, Your Honor. And again, returning to the first subsection of the regulation that's issued here today, that regulation states that it's an exception to begin with. The regulation as a whole discusses inspection of evidence. It clearly states that in the regulation title and it permits the inspection of a record with four exceptions. The one that's relevant to your question, Your Honor, is the second, the first exception, I'm sorry. And that's where inspection is not required. That's where there's derogatory information such as the Bufalino Statement that was unaware to the applicant or the petitioner, which we assume is in this case. In that regard, the individual solely has to be advised of that. They're not required to inspect the record there. That's the first exception to the general requirement that they be allowed to inspect the record. So when were the plaintiffs advised that there was a written statement? It's not in the notice. Well, they were advised that... The notice says that Ms. Bufalino was interviewed and said that she said that the marriage was fraudulent. There's no indication, is there, in any of the notices that there is a written statement. There was an actual written statement, separate apart from what it was actually spoken to? Yes. No, that's not in the notice. So let me make sure I have the sequence correct. So this goes up to the Board of Immigration Appeals, and in the appeal, the plaintiffs say, look, there's nothing in the record except for this. And then the Board of Immigration Appeals says, yes, there are statements in the record, and we're going to give them weight. Right? Correct, Your Honor. So how does that satisfy the second element of the regulation, which says that if you're going to deny based on statutory ineligibility, it shall only be based on information contained in the record, which is disclosed? So as an initial matter, Your Honor, disclosure does not equal production. I think those definitions are separate. It's clear if we review the actual language in and of itself. Disclosure is the process of making something known, a revelation of facts, whereas production is the actual presentation of a particular exhibit. So do you think the administrative record in a case should be secret? Excuse me, Your Honor? Should it be secret? No, Your Honor, and I think subsection 2 states exactly the opposite. It does say that the record has to be sufficient enough in order to be able to establish the The BIA relied upon a statement that was, correct me if I'm wrong, relied upon a statement that was not available to the plaintiffs in this case at the time of the summary judgment proceedings in district court. The actual statement was disclosed during the district court proceedings, sometime prior to the district court's decision. And the redacted statement was disclosed with the second notice, May 16, 2013. So it looks like the first notice was April 4, 2013, and it included a summary of the arrest report, and it stated that the agents had contacted Bufalino, who had said that the marriage was not valid. She had filed for an annulment. And then about six weeks later, on May 16, there was a second notice that included a Yes, Your Honor, that is correct. And again, so we're talking about subsection 2 here. And again, I think subsection 2, if the regulation intended to state that this was an inspection, they were required to provide the actual documents, they would have said so. The regulation and the agency clearly knew the language. They used the word inspection elsewhere within this section. So by using the word disclosure, they clearly were indicating that this was something different than subsection 2 that they were providing for. Let me ask a factual question, and if you don't know the answer, it's fine. At the time of the proceedings in district court, was Bufalino available to be called as a witness? I don't know that, Your Honor. How about the arresting officers, where the statement, the admission, which the plaintiffs contest, but the admission that the prior marriage was fraudulent, were those officers available? I'm unaware, Your Honor. I don't know if at the time of the proceedings they were even still employed by the agency. Okay. Thank you. Yes, Your Honor. And again, going back to the statutory language of subsection 2, the word there is information contained in. So we've been talking about the record of proceeding, and I think that qualifier should mean something as well. We need to give some weight to that actual qualifier. Again, had they required the record of proceeding to be produced, the language clearly would have said disclose the record of proceeding. So we have to give some weight or some discussion to information contained in. I think that means the agency was to disclose something less than the full record. And also, the word evidence is lacking from this subsection. We knew that the agency was able to use and knew what the word evidence meant. It uses this elsewhere in this regulation. It actually uses it in 8 CFR 204.2 when it discusses the agency's determination of marriage fraud. It says in that particular case, when discussing marriage fraud, there's a requirement that evidence, the word evidence is used, be placed in the alien's file. So what we have here is distinguishing between the record of proceeding, which I believe the opposing counsel is assuming means the entire A file. And that's not the case. We're talking about a record of proceeding which is something other than the A file, and we're talking about something other than evidence, which the agency clearly knew how to distinguish between those terms because it uses them in different parts in support of our argument. Again, a clear reading of subsection 2 is that with regard to the information in the record, the government is solely required to disclose it, and that's the only way that you can read this subsection to avoid a superfluous and useless meaning. Otherwise, it's typically a statement of the whole. At the end of the day, basically, what you're contending is that you can revoke this visa based on evidence that the agency fails to disclose. Because here in this case, it may be one thing if the BIA had not relied on the statement, but in fact the BIA says, well, I'll quote, the petitioner claims that Ms. Buffalino's statement is not in the record and thus should not be considered. The statement, however, is in the record and will be considered. And then it goes on to say that the agency is giving it great weight. Your Honor, I think maybe what that sounds like, I think subsection 2 is probably more closely read to a merits argument in that if the government, if the agency is to make a certain decision, they need to have, based on a statutory basis, they need to have a certain record to support it. I think that maybe goes to a question of merits regarding that particular decision, which would be reviewed under an APA standard. And so I think that's kind of how I would read that particular subsection as differing what the Court is saying here. Oh, I mean the BIA said it was in the record, and you're saying that's not the record? The fact that it's in the record of proceedings, Your Honor, I mean, that's what the BIA said. It had it before. It noted it in its decision. And I think then what we're discussing then is subsection 1, this idea of disclosure of derogatory information, which was, in fact, they were made known of that. No, I'm not arguing about, I'm not talking about subsection 1. I'm talking about subsection 2, and I think that's their argument today. The BIA said it was in the record, and it wasn't disclosed, and they relied on it. So if we, I think the issue is petitioners agree that subsection 1 does not require production. It requires a summary to be advised of the derogatory information, and our prior case in Hassan follows that as well. So the crux of this is the argument that subsection 2, when it says the decision has to be based on the information in the record, which is disclosed to the applicant, does that mean disclosed in the sense that it was provided, it was summarized to them, or does it mean that it has to be produced? And, you know, the parties seem to be disputing what the word disclosed means. Yes, Your Honor, and our position has been that disclosure doesn't mean production. It means something less than that. It means just providing the information contained within the report, and I think that was, in fact, done in this case. What supports that argument? The language, Your Honor, the definition of the word production, the use of disclosure as opposed to something more direct that they could have used, of actually using the word provided. They chose not to use that particular word, and there should be some meaning given to that. In addition, that qualifier, information contained within the record of proceedings, the only way that that can be read as a whole is if information contained within the record of proceedings has to mean something. If it was to disclose the entire record of proceedings, that would be one thing, but they're saying information contained in it, I would say that a summary would suffice. So my basis of that, Your Honor, is the actual statutory language. Reading it directly and unambiguously, as the Supreme Court traditionally reiterated in Kaiser, that's kind of what the court is tasked to do, and what we're trying to do is read that language as clearly as possible, avoid any ambiguity to establish that point. Let me ask one final question about the record to make sure I understand it correctly. Is there anything in the Bufalino written statements that would indicate that she was in agreement or in conspiracy to commit marriage fraud? I think her statement using opposing counsel's word was duped, so I think the indication was that she believed it was a legitimate marriage to begin with. Yes, Your Honor. In terms of due process, I think the issue there is, again, what was I'm making sure I understand the facts. Yeah, there's a discrepancy there, but it doesn't establish that there was a bona fide marriage, either way that that's read. Thank you, counsel. Thank you, Your Honor. We'll give you a minute. Thank you, Your Honor. We have some students who are going to come in the courtroom right now. Okay. Can you just pause for a second? Certainly, Your Honor. You get a little extra time to organize your thoughts. Okay. Thank you. Thank you. The next case must be impressive. Yeah. Any of the lawyers or law clerks in the audience are welcome to come up and sit in front of the bar. Thank you, Your Honor. I want to welcome the students. Remember to turn your cell phones off. Okay. You may proceed. Okay. Thank you, Your Honors. I know I only have a minute, so I'll try and just make a few quick points. So I want to clarify factually the record. So nobody knows when Bufalino's statement was produced because there's no information. There's no date on the statement, and it seems like it may have been in 2005 produced, I mean written. It may have been in 2004, but it was certainly never disclosed to the appellants. They had it in their possession. USCIS had it in their possession when they issued the NOIR in 2012, 2013. And not only did they not disclose it, they never even said that it existed. Was it available to your clients prior to the summary judgment proceedings in district court? Yes, but only pursuant to protracted FOIA litigation. And that didn't help them because the agency – The answer is yes. Okay, yes. So you were – and you were counsel at the time? No, Your Honor. He was – appellants were pro se. At that time? At that time. But there is – I'm sorry, Judge Hawkins. During the entire course of the summary judgment proceedings? Correct, Your Honor. Okay. Go ahead. Looking at the statement on the second page above Ms. Bufalino's signature, it says, I'll be filing for an annulment next week. So that gives us some indication if we look at the date that she filed for the annulment with respect to the date of this statement. Perhaps, except earlier in the statement she said she already filed for an annulment. So apparently there were two annulments, and it's not clear when they took place. So what remedy are you seeking here today? The reversal of summary judgment so you can go to trial? Or a grant of cross-voting summary judgment? We're seeking a reversal and instructions to the district court to remand to the agency so that they can have an adequate chance to rebut the statement and, as our due process argument makes, cross-examine both the immigration agents and Bufalino. It should just pass through the district court back to the agency. Okay. Very good. Thank you, Counsel. Thank you. The case has started. It will be submitted for decision.
judges: Thomas, Hawkins, Bade